### BRITAIN S. S. CO. v. J. B. KING TRANSP. CO.

(Circuit Court of Appeals, Second Circuit. April 6, 1904.)

#### No. 155.

1. COLLISION—STEAMSHIP AT REST—PASSING TUG WITH TOW.

A steamship which, while not anchored, was about to anchor, and had stopped her engines, and was moving very little with the tide, if at all, had the rights of a vessel at rest with respect to passing vessels; and a tug with a tow on a long line, which saw and knew the situation of the ship, was solely in fault for a collision between her and the tow, due to the failure to allow sufficient room in passing.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, holding the tug Gypsum King solely in fault for a collision between barge No. 19, in tow of the Gypsum King, on a hawser, and the S. S. Woodford. The collision occurred on the anchorage off Clifton, Staten Island, from which the tug was taking the barge, and where the steamer was anchoring. At the time of the collision, a fog which had theretofore prevailed had begun to lighten up, and both vessels took advantage of the change; the tug starting on her voyage to Newport News, and the steamer shifting her anchorage some 600 or 800 feet.

The following is the opinion of the District Court, by HOLT, District Judge: "I think, on the evidence, that, although there was heavy fog at times on the day of the collision, during the period immediately preceding the collision there was only a light fog, and vessels and objects could be seen a quarter of a mile away. The Woodford was not at anchor. She was, therefore, under the preliminary inland rules, technically under way. If the ordinary rules of navigation apply, I think that the Gypsum King with her tow was an overtaking vessel under rule 24, and was in fault for not keeping out of the way of the Woodford. The evidence, however, is clear that the Woodford was almost, if not quite, at a standstill, preparing to anchor, and the men on the Gypsum King testify, in substance, that they thought at first that the Woodford was at anchor, and then that they saw that, although not anchored, she was about to anchor. I think that, in fact, she was probably still forging ahead very slightly, and drifting up a little with the flood tide, but her propeller was reversed, and she was doing all she could to entirely stop or make sternway, and she may have been entirely stopped. Under these circumstances, if she is to be regarded as a vessel substantially not under way, I think the Gypsum King was in fault for running into her. There is a presumption of fault when a vessel under way and under control runs into a vessel not

under way. The Gypsum King should have borne off longer to starboard, until her tow had passed the Woodford, and should have originally given the Woodford a wider berth. She was taking a course too near the Woodford for a tug having a tow on so long a hawser. I think the Woodford was not in fault for not blowing fog signals. She was not bound to blow fog signals because the Gypsum King did. The real test is whether it was foggy enough to require them. I think it was not. In any event, the only object of fog signals is to let other ships know that the one blowing them is there. The Gypsum King saw the Woodford 1,000 feet away, and that was an ample distance to permit the Gypsum King and her tow to pass the Woodford in safety. In my opinion, therefore, the omission of fog signals on the Woodford had nothing to do with the collision. My conclusion is that there should be a decree for the libelant, with a reference to ascertain the damage."

Chas. C. Burlingham, for appellant.

J. Parker Kirlin, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

PER CURIAM. The controlling question in the case is whether or not the steamer was substantially in motion. The district judge found that, although probably still forging ahead very slightly, and drifting up a little with the flood tide, she was almost, if not quite, at a standstill, preparing to anchor, and not under way. He heard some of the important witnesses, and there is no evidence presented sufficient to warrant a reversal of that finding. The witnesses for the steamer testify that she was not in motion. The respondent's witnesses testified that when they first saw her she was apparently at anchor, and, although subsequently they state she was in motion, they yet admit that they did not see her moving through the water, and apparently infer merely that she must have been in motion because collision ensued. The steamer was practically a vessel not under way, was seen to be such by the navigators of the tug, and was so seen at a distance amply sufficient to enable the latter to avoid collision, had they not undertaken to shave too close.

The decree is affirmed, with interest and costs.